Craig C. Marchiando (SBN 283829)
Leonard A. Bennett, *pro hac vice forthcoming*
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com
lenbennett@clalegal.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| TERRACE ELLIS,<br><br>  Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>  Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

The Plaintiff, Terrace Ellis ("Ellis" or "Plaintiff"), *on behalf of herself and all consumers similarly situated*, files this Complaint against Defendant Experian Information Solutions, Inc. ("Experian"). In support thereof, Plaintiff alleges as follows:

**I.     PRELIMINARY STATEMENT.**

1.     This is a consumer class action brought against Experian for a willful violation of § 1681g(a) of the Fair Credit Reporting Act ("FCRA"), which requires credit reporting agencies to "clearly and accurately disclose to consumers" all of the information in their files, including the "sources of the information." 15 U.S.C. § 1681g(a)(1)-(2). In this instance, Experian consistently identified "Advanta Bank" or "Advanta Credit Cards" as the sole source of information in consumers' credit files despite Experian's unquestionable knowledge that it was Cardworks Servicing, Inc.

Servicing, LLC—and no one else—who, since August 2010, has supplied all of the information to Experian.

2.  Plaintiff learned of a purported debt in her credit reports allegedly asserted by "Advanta Bank" and/or "Advanta Credit Card." Whoever had reported the tradeline[1] falsely represented that the Plaintiff had an account with Advanta Bank and had an outstanding balance. Plaintiff had no such account.

3.  Advanta Bank does not exist. It had been shut down in March 2010 by Utah and Federal bank regulators. Its contract to service an Advanta branded-credit card portfolio owned by a Deutsche Bank trust was terminated in July 2010. And Deutsche Bank had hired Cardworks Servicing, Inc. Servicing, LLC to service those accounts going forward. It was thus that entity that had reported the "Advanta" account into Ms. Ellis' credit reports as well as those of putative class members.

4.  This is not the first class action brought against Experian for its failure to identify Cardworks Servicing, Inc. Servicing, LLC as a source of the information in consumers' credit files. On June 19, 2014, the United States District Court of the Eastern District of Virginia granted a Motion for Class Certification and certified a class action consisting of all consumers who requested a consumer disclosure from Experian and who received a document in response identifying "Advanta Bank" or "Advanta Credit Cards" as the only source of the information for the tradeline in the consumers' reports. *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-00624-JAG, 2014 WL 2800766, at *1 (E.D. Va. June 19, 2014). The certified class in *Dreher* included nearly 70,000 class members, including Ellis, who did not exclude herself from the class action.

---

[1] Consumer reporting agency ("CRA") Experian defines a "tradeline" as an "[e]ntry by a credit grantor to a consumer's credit history maintained by a credit reporting agency" and explains that a "tradeline describes the consumer's account status and activity." http://www.experian.com/blogs/ask-experian/credit-education/faqs/glossary/ last visited July 6, 2017.

5. The evidence was irrefutable that Experian deliberately ignored § 1681g(a)(2) and did so at the request of its collector customer Cardworks Servicing, Inc., which wanted to continue an illusion for targeted consumers that Advanta was still collecting the Deutsche Bank debts. Accordingly, after the court granted class certification, it awarded summary judgment to Plaintiff and the class members as to Experian's liability for willfully violating § 1681g(a)(2). The only issue remaining was the amount of statutory and punitive damages. In finding as a matter of law that Experian had willfully violated the statute, the court held that "Experian's interpretation of 'sources of information' to include any variety of entities *other* than the one that actually provided the information is objectively *un*reasonable." *Dreher v. Experian Info. Sols., Inc.*, 71 F. Supp. 3d 572, 583 (E.D. Va. 2014), *vacated on other grounds*, 856 F.3d 337 (4th Cir. 2017). After the summary judgment ruling, Dreher and Experian entered into a stipulation as to the amount of damages to award each of the class members without waiving Experian's right to appeal the court's rulings, including the court's rulings regarding Dreher's standing under Article III. *Dreher v. Experian Info Sols., Inc.*, No. 3:11-cv-00624-JAG (Aug. 6, 2015, Doc. 396).

6. However, after appeal the Fourth Circuit vacated the district court's judgment on May 11, 2017, and granted Experian's challenge to class certification. It dismissed the case because it found the district court had lacked subject-matter jurisdiction as to Mr. Dreher. Mr. Dreher failed to prove that he himself was personally harmed by Experian's failure to reveal and disclose to him the source of its "Advanta Bank" tradeline. 856 F.3d 337 (4th Cir. 2017). In particular, the Fourth Circuit held that "*Dreher* failed to demonstrate that *he* has suffered a concrete injury sufficient to satisfy Article III standing" because Dreher failed to demonstrate how viewing the

name "Advanta" rather than "Cardworks Servicing, Inc." individually caused a "real world harm" to Dreher. *Id*. at 346 (emphasis added).[2]

7. Over a course of years, Ms. Ellis tried to resolve and end the continued reporting of an Advanta Bank and Advanta Bank credit card tradeline in her credit reports and the collection of such a debt more generally. Ms. Ellis suffered tangible real world harm. She spent hours of her time researching the history of Advanta Bank and communicating with one or more entities that claimed they were Advanta Bank and drafting and defending court pleadings in her multi-year attempt to get the undisclosed furnisher to cease reporting and collection of the Advanta account and tradeline.[3]

---

[2] The Fourth Circuit's analysis was limited to Dreher's standing; not the standing of the unnamed class members. Although Ellis disagrees with the Fourth Circuit's analysis regarding Dreher's concrete harm, Ellis suffered considerably more "real world harm" than Dreher. The reasoning in Dreher would also be at odds with the law in the Ninth Circuit (and every other). *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (noting that when a FCRA disclosure requirement "creates a right to information" in "providing a private cause of action for [its] violation," the court necessarily must find that "Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy." *See Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, J., concurring)).")

[3] A consumer's "loss of income" from time spent "addressing [credit reporting] mistakes" is compensable. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 240 (4th Cir. 2009). And of course the Court is familiar with the numerous pleadings and multiple Complaints Ms. Ellis has had to draft, file and defend without knowing and being able to identify the actual source of the inaccurate "Advanta Bank" tradeline in her credit reports. *Terrace Ellis v. Advanta Bank, et al.,* Case No. 5:16-Cv-06437-Blf. In fact, in that case, she was forced to initially (and incorrectly) name as defendants Advanta Bank, Advanta Credit Cards, Advanta Bank/Cardworks Servicing, Inc., Cardworks Servicing, Inc., Inc., Advanta, Advanta Business Service and even "Does 1-20". None of these were the actual source of Experian's tradeline.

8. Plaintiff also brings an individual action for Experian's violations of FCRA § 1681e(b) and the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.14.

## II. JURISDICTION AND VENUE.

9. The Court's jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331. Supplemental jurisdiction is available pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this District and Division under 28 U.S.C. 1391(b)(2) because Plaintiff resides here and a substantial part of the events giving rise to her claim occurred in this District and Division.

11. Because Ellis was a *Dreher* class member, her claims against Experian were tolled from the commencement of *Dreher* until the district court dismissed the case for lack of jurisdiction on July 11, 2017, in accordance with the Fourth Circuit's instructions. The doctrine of equitable tolling is well established in Supreme Court precedent. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). Together, *American Pipe* and *Crown, Cork & Seal* established that individual claims of unnamed class members are tolled during the pendency of an earlier class action. The Ninth Circuit has the principles from *American Pipe* and *Crown, Cork & Seal* to facts identical to those here—where an earlier class action was dismissed as to the previous plaintiff for lack of jurisdiction, with a new action brought by a different plaintiff. The class claims were tolled during the pendency of the earlier case, which was ultimately dismissed. *Resh v. China Agritech, Inc.*, 857 F.3d 994 (9th Cir. 2017). Accordingly, Ellis, on behalf of herself and the former *Dreher* class members, brings this class action against Experian for statutory and punitive damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681n.

## III. PARTIES.

12. Plaintiff Terrace Ellis is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

13. Experian is a corporation organized under the laws of California with a principal place of business in Costa Mesa, California. At all times relevant to this Complaint, Experian was a consumer reporting agency as defined by § 1681a(f) of the FCRA.

## IV.   FACTUAL BACKGROUND.

### A.   The Purpose And Requirements Of Section 1681g(a)(2).

14. Section 1681g of the FCRA requires that reporting agencies, upon any request by a consumer, "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request," as well as "[t]he sources of the information." 15 U.S.C. § 1681g(a)(1) & (2).

15. By giving consumers the right to access the information in their files—and to know where it came from—this requirement serves several important purposes: it allows consumers to confirm that the information is accurate, and it tells them who to contact if it's not, and if necessary, who to sue to prosecute her FCRA rights and remedies.

16. Indeed, Congress "felt that it was necessary to give consumers a specific statutory right to acquire such information on sources" because in some cases it "may be the only way in which the consumer can effectively" correct mistakes. 116 Cong. Rec. 35,940 (1970).

17. The FCRA's notice provisions, including § 1681g(a), are the foundation of consumer oversight on which FCRA compliance is built. *See* National Consumer Law Center, Fair Credit Reporting, at 73 (7th ed. 2010) ("Consumers can review a report of the file contents to determine if there is inaccurate or incomplete information. Understanding the nature of negative information in the file also is an aid to improving the consumer's credit profile.  Disclosure of the consumer's file is an essential first step to handling almost any problem relating to a consumer's credit file and consumer reports related to the file"); *Gillespie v. Equifax Info. Servs., L.L.C.* 484 F.3d 938, 941

(7th Cir. 2007) ("A primary purposes of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information *via* the grievance procedure established under § 1681i.").

**B. Experian Willfully And Knowingly Violated The FCRA When It Withheld Cardworks Servicing, Inc. As A Source Of Information To Appease A Valued Business Partner.**

18. On March 19, 2010, Advanta Bank Corp., Draper, UT was closed by the Utah Department of Financial Institutions, which then appointed the FDIC as Receiver.

19. One of the Advanta Bank Corp. subsidiaries had previously contracted to service certain credit card accounts owned by a Master Trust of which Deutsche Bank was Trustee. Discovery will show the account-at-issue, which has never belonged to Plaintiff, was among those 220,000 accounts.

20. On July 9, 2010, the FDIC, as receiver for Advanta Bank, wrote to Experian's General Counsel's Office regarding the collapse of Advanta and the termination of contracts between Advanta and Experian.

21. In particular, this letter stated "[o]n March 19, 2010, Advanta Bank Corp. (the 'Bank') was closed by the Utah Department of Financial Institutions and the [FDIC] was appointed as Receiver for the Bank (the 'Receiver'). . . . This letter confirms that the terms of the letters between Advanta Bank Corp. and Experian referenced above expired on or about June 30, 2009, and have not been renewed or extended in any manner whatsoever and that Advanta Bank Corp. and the Receiver have no further obligations thereunder."

22. On July 20, 2010, Advanta Bank was formally terminated by Deutsche Bank. By separate contracts, a company named Vion Holdings, LLC, was assigned ownership of the accounts and Cardworks Servicing, Inc. Cardworks Servicing, Inc. took over the servicing of the accounts on behalf of Vion.

23. On October 4, 2010, Cardworks Servicing, Inc.'s Vice President of Operational Risk, Brian Bennett, provided a letter to Experian indicating that "[t]his letter will formally document the dissolution of Advanta Bank Corp (ABC) and the assumption of all servicing duties for the ABC originated accounts by Cardworks Servicing, Inc. Servicing (CWS) effective 8/1/10. ABC was shut down by the State of Utah Department of Financial Institutions and the FDIC was appointed as Receiver in March 2010. . . . Cardworks Servicing, Inc. was selected to perform all aspects of servicing of this portfolio as ABC had previously done."

24. During the setup up by Experian of the new accounts in October 2010, Experian delegated total discretion to Cardworks Servicing, Inc. as to what entity would be identified in the subject tradelines as the "source" and asked its customer what Experian should reveal to consumers. (Oct. 21, 2010 e-mail from James Kilka, attached as Ex. 1). To which, Cardworks Servicing, Inc. Servicing, Inc. instructed, "No, we would not want CWS or Cardworks Servicing, Inc. mentioned in the trade line, just Advanta Credit Cards." *Id*.

25. Then, *less than two hours* after receiving the e-mail from Cardworks Servicing, Inc. indicating that it did not want to be disclosed, Mr. Kilka wrote an e-mail requesting the relevant department at Experian to change to Advanta Credit Cards and the department complied with the request.

26. The reporting of these credit accounts was important to Experian's customer, as without it actual account holders may not pay the accounts. For that reason, Cardworks Servicing, Inc. started reporting them to Experian only if the consumer did not pay as instructed. It did not report former-Advanta accounts that were current.

27. Experian's disclosure to Plaintiff and other *Dreher* class members was a materially false representation—from the moment Cardworks Servicing, Inc. was

appointed to service the Advanta accounts in August 2010, it was the exclusive entity that supplied the information appearing on the Advanta tradelines.

28. FCRA "willfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'" *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007)).

29. A plain-language reading of the statute itself would have led any objectively reasonable party to conclude that Cardworks Servicing, Inc. was a "source" of the information Experian reported as the Advanta tradeline.

30. As early as May 30, 2013, in denying Experian's first motion for summary judgment, the United States District Court for the Eastern District of Virginia held that Experian "was not 'merely careless' but 'substantially' more culpable when it disclosed Advanta as the sole source of the information at issue. Quite simply, Experian decided to omit Cardworks, the most logical 'sourc[e] of the information' at issue in Dreher's credit report—bar none." *Dreher v. Experian Info. Sols., Inc.*, 2013 WL 2389878, at *8 (E.D. Va. May 30, 2013) ("*Dreher I*").

31. Despite the district court's holding, Experian continued to omit Cardworks Servicing, Inc. as a source of the information in its Advanta tradelines, including on the consumer files furnished to Ellis on December 3, 2014 and on each other occasion through March 2016.

**C. Experian Believes And Understands That The "Source of the Information" Is The Entity That Actively Controls The Reporting Of A Credit Tradeline And To Whom Experian Will Forward A Consumer's Credit Reporting Dispute.**

32. In real life—outside its § 1681g(a)(2) litigation positions—Experian has always understood that the "source" of credit information is the "furnisher" who actually reported the information to the CRA and responds to its consumer disputes.

33. Not only does Experian understand the meaning of the term "sources of information," but a Data Release Agreement between Experian and Cardworks

Servicing, Inc. indicates that Experian chose to modify the standard language of its Data Release Agreement and, instead, deliberately omitted Cardworks Servicing, Inc. as a source of information from reports revealed to consumers.

34. In particular, Experian's agreement with Cardworks Servicing, Inc. provided: "Experian will use reasonable commercial efforts ***not*** to release a list that specifically identifies business entities as the [CWS's] customers ***or identify [CWS] as the source of specific data reported***, unless Client specifically authorizes Experian, in writing, or should Client choose to provide its data to Experian in a mutually agreeable format that allows such disclosure . . . ." *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-00624-JAG (Doc. 176-20) (emphasis added).

35. The language in its Data Release Agreement with Cardworks Servicing, Inc. is in sharp contrast to its template language for its form agreement, which states, "Experian will use reasonable efforts not to release specific information identifying any listed business entity as the source of any specific contributed Data. Experian ***may disclose Contributor's identity as the source of information*** on the specific business credit report to the business that is the subject of that report." *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-00624-JAG (Doc. 176-21) (emphasis added).

36. Moreover, consistent with its use in its standard Data Release Agreement, Experian's own website defines the term "source" as "the business or organization that supplied certain information that appears on the credit report."

37. Similarly, Kimberly Hughes, Experian's most frequent litigation employee-witness, testified that Experian "essentially relies" on its furnisher source to investigate the consumer's dispute. *Gorman v. Experian Info. Sols. Inc.*, No. 1:07cv1846 RPP (S.D.N.Y. 2007) (Doc. 42-5, Dep. Tr. of Kimberly Hughes, Jan. 28, 2008 at 110:6-12).

38. Regarding Experian's investigation, Ms. Hughes testified, "we do go to the reporting source," which is the data furnisher "the reporting source for the investigation" that has the subscriber relationship with Experian. *Id*. at 110:7–111:12.

39. Prior to *Dreher*, Experian had uniformly stated its knowledge and belief that the "source" of a tradeline is the entity that actually reported that credit data and to which Experian must send its dispute document, the ACDV (or CDV). *See, e.g.*, *Dennis v. BEH-1, LLC & Experian Info. Sols., Inc.*, Brief of Defendant-Appellee Experian Information Solutions, Inc., 2004 WL 3155937 at *20 (9th Cir. 2004) ("[A CRA] complies with the FCRA's reinvestigation requirements by reinvestigating disputed information with the source of the information to verify its accuracy.").

**D.    Plaintiff was a Class Member in *Dreher*.**

40. On June 19, 2014, the United States District Court of the Eastern District of Virginia granted Mr. Dreher's Motion for Class Certification and certified a class action consisting of all consumers who requested a consumer disclosure from Experian and who received a document in response identifying "Advanta Bank" or "Advanta Credit Cards" as the only source of the information for the tradeline in the consumers' reports. *Dreher II*, 2014 WL 2800766, at *1.

41. The class that was tolled in *Dreher* began as of September 11, 2011. Between that date and the date in March 2016 when the Advanta tradeline was finally removed from Plaintiff's credit report, Ms. Ellis had requested and received multiple file disclosures pursuant to § 1681g(a)(2) that failed to disclose Cardworks Servicing, Inc. as the source of the Advanta tradeline.

42. Between September 11, 2011 and the date in March 2016 when the Advanta tradeline was finally removed from Plaintiff's credit report, Ms. Ellis had requested and received one or more file disclosures pursuant to § 1681g(a)(2) that failed to disclose Cardworks Servicing, Inc. or any other entity other than Advanta as the source of the Advanta tradeline.

43. In July 2014, Ellis requested a copy of her disclosure from Experian, which she received in August 2014, which showed a delinquent account in the name of "Advanta Bank" and listed no other source for this tradeline.

44. Ellis disputed this tradeline with Experian in November 2014, for which she received a response from Experian in December 2014.

45. In *Dreher*, Experian produced a list of every consumer who met the Dreher class definition, and advocated for and litigated that list. (Dkt. 393). Experian represented that Plaintiff Ellis was a class member and she was not opted out.

46. Because Ellis was a class member, her claims against Experian—and those claims of the other unnamed class members—were tolled from the commencement of *Dreher* in 2011 through its dismissal on July 11, 2017. *American Pipe*, 414 U.S. at 538; *Crown, Cork & Seal*, 462 U.S. at 345; *Resh*, 857 F.3d at 994.

**E. Experian Also Failed To Follow Reasonable Procedures To Ensure Maximum Possible Accuracy As Mandated By 15 U.S.C. §§ 1681e(b) And CCCRAA, Cal. Civ. Code § 1785.14.**

47. At least as early as November 2014, Plaintiff had placed Experian on notice that she was not the person who applied for, used, or was otherwise obligated upon any Advanta tradeline or account.

48. Additionally, by at least November 2014, Experian was on actual notice that no consumer still owed "Advanta Bank" upon the Deutsche Bank/Vion Holdings accounts, that Cardworks Servicing, Inc. did not receive, possess or retain any Advanta account applications, and that Cardworks Servicing, Inc. did not have in place any actual dispute procedures to conduct the investigations otherwise required under the FCRA.

49. In November 2014, Plaintiff sent Experian a dispute further advising it of its incorrect reporting.

50. And by November 2014, Experian had been sued by multiple FCRA consumers placing it on notice that Cardworks Servicing, Inc. was not a reliable source and did not itself conduct reasonable reinvestigations.

51. Thus, by at least November 2014, Experian knew that Cardworks Servicing, Inc. was not a reliable source of credit information.

52. Nevertheless, on multiple occasions within 2 years of the filing of this action, Experian published the false Advanta account in consumer reports it sold to third party customers.

## V.   CLAIMS FOR RELIEF.

### COUNT ONE (CLASS CLAIM)
### VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681g(a)(2)

53. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

54. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class defined as follows: All natural persons who requested a copy of their consumer disclosure from Experian between September 11, 2011, through the present; (2) received a disclosure in response that included a tradeline with the name "Advanta Bank" or "Advanta Credit Cards"; (3) did not identify Cardworks Servicing, Inc. as a source of the information for the Advanta Bank or Advanta Credit Cards tradeline; and (4) whose "date of status" or "date last reported" field for the tradeline reflected a date of August 2010 or later.

55. Upon information and belief, and as reflected by the class size in *Dreher*, Plaintiff's counsel estimates that the class is in the tens of thousands and thus so numerous that joinder of all members is impractical.

56. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a) whether Experian failed to send the required

information in response to a consumer's request for a full copy of his or her Experian file; (b) whether this failure was a result of Experian's standard operating procedure when responding to a consumer's request; (c) whether Experian's conduct constituted a violation of the FCRA; (d) whether Experian's conduct was willful; and (e) the appropriate amount of statutory and/or punitive damages that are appropriate for such a violation.

57.     Plaintiff's claims are typical of those of the class members. All are based on the same facts and legal theories.  Experian's response to a consumer's request for a full copy of his or her consumer file routinely failed to disclose Cardworks Servicing, Inc. as a source of information in the Advanta tradelines. The violation alleged is the same and the class claim will rise or fall entirely based upon whether or not Plaintiff's claim is successful.

58.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.  Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative classes and has accepted such responsibilities.

59.     Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

60.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that: As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an

individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Experian's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

61. Experian's failure to clearly and accurately disclose the source Cardworks Servicing, Inc. as a source of the information in Plaintiff and the class member's reports violated § 1681g(a)(2) of the FCRA.

62. The conduct, action, and inaction of Experian was willful, rendering Experian liable for statutory and punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.

63. As a result of these FCRA violations, Experian is liable to the Plaintiff and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT TWO (INDIVIDUAL CLAIM)
### VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b) (Individual Action)

64. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

65. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding the Plaintiff. Specifically, Experian failed to follow such procedures in its furnishing of Plaintiff's consumer reports, on multiple occasions on and after the period starting two years before the filing of this action, with the Advanta tradeline.

66. As a result of this conduct by Experian, the Plaintiff suffered actual damages, including without limitation, by example only and as described herein on their behalf by Counsel: loss of time seeking correction of the inaccuracy, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

67. Experian's violations of 15 U.S.C. § 1681e(b) were reckless or willful, rendering Experian liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

68. Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT THREE (INDIVIDUAL CLAIM)
### VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
### Cal. Civ. Code § 1785.14

69. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

70. Defendant's conduct alleged in and regarding Count Two independently violated the CCCRAA, Cal. Civ. Code § 1785.14, which requires that "whenever a consumer credit reporting agency prepares a consumer credit report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

71. As a result of Experian's violations of Cal. Civ. Code § 1785.14, the Plaintiff suffered actual damages, including but not limited to: time spent eventually

obtaining correction, loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

72. This violation by Experian's was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) of not less than $100 and not more than $5,000 for each time month that Defendant reported the inaccurate tradeline from the date two years before the filing of this action through March 2016. In the alternative, Experian was negligent, entitling the Plaintiff to recovery under Cal. Civ. Code § 1785.31(a)(1).

73. The Plaintiff is entitled to recover actual damages (including pain and suffering), lost wages, costs and attorney's fees from Cardworks in an amount to be determined by the Court as set out in Cal. Civ. Code § 1785.31(a)(1).

WHEREFORE, Plaintiff, on behalf of herself and the putative class members, move for class certification and for statutory and punitive damages, as well as her attorneys' fees and costs against the Defendant for her class claim, as well as actual, statutory, and punitive damages and attorneys' fees and costs for her individual claims; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**TERRACE ELLIS,** *individually and on behalf of and all others similarly situated*

By:   /s/ Craig C. Marchiando

Craig C. Marchiando (SBN 283829)
Leonard A. Bennett, *pro hac vice forthcoming*
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450

lenbennett@clalegal.com

***Attorneys for Plaintiff***