United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TERRACE ELLIS,<br><br>        Plaintiff,<br><br>     v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>        Defendant. | Case No. 17-CV-07092-LHK<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TO STRIKE CLASS ALLEGATIONS**<br><br>Re: Dkt. No. 12 |

Plaintiff Terrace Ellis ("Plaintiff") brings this putative class action against Defendant Experian Information Solutions, Inc. ("Defendant") related to Defendant's allegedly inaccurate credit reports. Before the Court is Defendant's motion to dismiss Count One of Plaintiff's complaint or to strike the class allegations pertaining to Count One. Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES Defendant's motion to dismiss or to strike class allegations.

## I. BACKGROUND

### A. Prior Litigation in *Dreher*

Because Defendant's motion to dismiss depends in large part on the preclusive effect of prior litigation on the instant action, the Court first provides the relevant details of that prior

1

United States District Court
Northern District of California

litigation. In 2011, Michael Dreher brought a putative class action against Defendant ("*Dreher*") in the United States District Court for the Eastern District of Virginia. *See Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 341–42 (4th Cir. 2017). In his complaint, Mr. Dreher alleged that in 2010, while Mr. Dreher was "undergoing a background check for a security clearance," the federal government "discovered he was associated with a delinquent credit card account" that had been taken out by Mr. Dreher's cousin in Mr. Dreher's name. *Id.* at 340. "To clear up the matter," Mr. Dreher requested a credit report from Defendant. *Id.* Subsequently, Mr. Dreher received a series of credit reports from Defendant, each of which "listed a delinquent account under the names 'Advanta Bank' or 'Advanta Credit Cards'" (collectively, "Advanta"). *Id.*

However, "[u]nbeknownst to [Mr.] Dreher," Advanta had been shut down by the "Utah Department of Financial Institutions" since earlier in 2010, and an entity called CardWorks, Inc. ("CardWorks") had been appointed "as servicer of Advanta's portfolio." *Id.* at 341. "This meant that CardWorks would respond to credit card customer complaints" regarding all of Advanta's credit card accounts "and effect compromises and settlements of ongoing credit card customer disputes." *Id.* (internal quotation marks omitted and alterations adopted). Even though Advanta had been defunct since early 2010, Defendant continued to list the Advanta name, and not CardWorks, "for all Advanta accounts" on Defendant's credit reports, which explains why Mr. Dreher received credit reports from Defendant that listed a delinquent account under the Advanta name. *Id.* at 340–41.

Mr. Dreher's complaint against Defendant asserted that Defendant's listing of Advanta instead of CardWorks on credit reports amounted to a violation of 15 U.S.C. § 1681g(a)(2), which requires consumer reporting agencies to "clearly and accurately disclose" the "sources of the information" listed on credit reports. Mr. Dreher sought to pursue this § 1681g(a)(2) claim on behalf of a class composed of all persons who (1) requested a credit report from Defendant "on or after August 1, 2010"; and (2) "received a document in response that identified" Advanta "as the only source of [] information." *Id.* at 342. The United District Court for the Eastern District of Virginia certified the class on May 30, 2013. *Id.* Thereafter, Defendant moved for summary

2

judgment on the ground that Mr. Dreher lacked Article III standing to assert a § 1681g(a)(2) claim against Defendant, but the district court disagreed with Defendant and found that Mr. Dreher had standing. *See id.* Then, in lieu of holding a jury trial on the class claim, "the parties stipulated to an award of $170 in statutory damages for each class member." *Id.* On August 26, 2015, the district court entered final judgment in favor of Mr. Dreher and the *Dreher* class "in the amount of $170 per class member, totaling over $11.7 million." *Id.*

Defendant then appealed to the United States Court of Appeals for the Fourth Circuit. *Id.* In its appeal, Defendant argued that the district court erred in finding that Mr. Dreher had Article III standing to pursue the class claim for violation of 15 U.S.C. § 1681g(a)(2). *See id.* at 340. The Fourth Circuit agreed with Defendant. Specifically, although Mr. Dreher alleged that he was harmed by Defendant's misidentification of CardWorks as Advanta on credit reports because he was deprived of the "value in knowing who it is you're dealing with," and because "if a company can hide who they are, they're not concerned about consumer goodwill," *id.* at 346 (internal quotation marks omitted and alterations adopted), the Fourth Circuit stated that this harm was "not the type of harm Congress sought to prevent when it enacted the FCRA," in that it did not, for example, have any detrimental effects on Mr. Dreher's "credit resolution process." *Id.* As a result, the Fourth Circuit held that Mr. Dreher had alleged a mere "statutory violation divorced from any real world effect" and therefore lacked standing to pursue a § 1681g(a)(2) claim against Defendant based on Defendant's listing of Advanta instead of CardWorks on credit reports. *Id.* Accordingly, the Fourth Circuit vacated the district court's judgment and remanded with instructions to dismiss the case "on jurisdictional grounds." *Id.* at 347.

**B. The Instant Action**

On December 13, 2017, about seven months after the Fourth Circuit's *Dreher* decision was issued, Plaintiff filed the instant action against Defendant in this Court. *See* ECF No. 1 ("Compl."). Like Mr. Dreher in the *Dreher* case, Plaintiff alleges that (1) she requested credit reports from Defendant; (2) those credit reports listed an Advanta account that had an outstanding balance; and (3) at the time, Advanta had already been "shut down," and CardWorks had been

3

hired to "service those [Advanta] accounts going forward." *Id.* ¶¶ 2–3. However, unlike Mr. Dreher, Plaintiff also alleges that "[o]ver the course of years," in her efforts "to resolve and end the continued reporting of an Advanta Bank . . . credit card tradeline in her credit reports," Plaintiff "spent hours of her time researching the history of Advanta" and "draft[ing], fil[ing], and defend[ing]" "numerous pleadings" that incorrectly named Advanta as defendant, "without knowing and being able to identify the actual source of the inaccurate 'Advanta Bank' tradeline in her credit reports." Compl. ¶ 7 & n.3.

Plaintiff asserts three causes of action against Defendant. *See* Compl. Plaintiff's first cause of action ("Count One") is asserted on behalf of a putative class and is identical to the class claim that Mr. Dreher asserted against Defendant in *Dreher*: violation of 15 U.S.C. § 1681g(a)(2) based on Defendant's identification of Advanta instead of CardWorks in Defendant's credit reports. *See* Compl. ¶¶ 53–63. Also similarly to *Dreher*, Plaintiff seeks to assert Count One on behalf of a class composed of all persons who (1) requested a credit report from Defendant "between September 11, 2011, through the present"; and (2) "received a disclosure in response that included a tradeline with the name 'Advanta Bank' or 'Advanta Credit Cards,'" but that "did not identify Cardworks Servicing, Inc. as a source of the information for the Advanta Bank or Advanta Credit Cards tradeline." *Id.* ¶ 54. However, Plaintiff also states that she was a member of the class that was certified in *Dreher*, and that she did not opt out of the *Dreher* class. *See id.* ¶¶ 40–46. Plaintiff's second and third causes of action are for violations of 15 U.S.C. § 1681e(b) and California Civil Code § 1785.14, respectively, and are both asserted as individual claims. *See id.* ¶¶ 64–71.

On February 12, 2018, Defendant filed the instant motion to dismiss Count One of Plaintiff's complaint or to strike Plaintiff's class allegations. *See* ECF No. 12 ("Mot."). Plaintiff opposed Defendant's motion on April 11, 2018, *see* ECF No. 25 ("Opp."), and Defendant filed a reply on April 25, 2018. *See* ECF No. 28 ("Reply").

## II. LEGAL STANDARD

**A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his ... claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

**B. Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S.

5

178, 182 (1962)).

## III. DISCUSSION

As discussed above, in addition to asserting two individual claims, Plaintiff's complaint asserts one class claim. Specifically, Plaintiff seeks to assert Count One in her complaint, for violation of 15 U.S.C. § 1681g(a)(2), on behalf of a putative class. Defendant moves to dismiss Count One on the grounds that it is barred by issue preclusion. *See* Mot. at 6–13. Further, in the event that Count One is not dismissed, Defendant moves to strike the class action allegations pertaining to Count One because according to Defendant, "it is clear that no such class action is possible here." *See id.* at 13–15. The Court addresses each motion in turn.

### A. Motion to Dismiss Based on Issue Preclusion

Defendant argues that Count One of Plaintiff's complaint is collaterally estopped by the Fourth Circuit's determination that the single named plaintiff and representative of the *Dreher* class—of which Plaintiff was a member—lacked standing to assert the same violation of 15 U.S.C. § 1681g(a)(2) that Plaintiff seeks to assert in Count One of the instant case (specifically, that Defendant listed Advanta, and not CardWorks, on the credit reports of those who had credit card accounts with Advanta, even though Advanta had gone out of business and CardWorks had been appointed as the "servicer of Advanta's portfolio," *Dreher*, 856 F.3d at 341). *See* Compl. ¶ 61 ("[Defendant's] failure to clearly and accurately disclose the source Cardworks as a source of the information in Plaintiff and the class members' reports violated § 1681g(a)(2) of the FCRA."). In other words, Defendant's argument is that the Fourth Circuit's determination "that identifying 'Advanta' instead of 'CardWorks' created no Article III injury" *to the named plaintiff in Dreher* precludes *every other member of the* Dreher *class* (including Plaintiff) from suing Defendant under 15 U.S.C. § 1681g(a)(2) for the same misidentification, even if some of the *Dreher* class members differed from Mr. Dreher in that they actually suffered Article III injury as a result of Defendant's misidentification. Mot. at 13. For the reasons explained below, the Court finds that Plaintiff is not barred by issue preclusion from asserting Count One in the instant case.

A plaintiff is collaterally estopped from litigating an issue that was litigated in a previous

6
Case No. 17-CV-07092-LHK
ORDER DENYING MOTION TO DISMISS OR TO STRIKE CLASS ALLEGATIONS

action if (1) "there was a full and fair opportunity to litigate the issue in the previous action"; (2) "the issue was actually litigated in that action"; (3) "the issue was lost as a result of a final judgment in that action"; and (4) the plaintiff "was a party or in privity with a party in the previous action." *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000). However, "[t]he party asserting collateral estoppel must first show that the estopped issue is *identical* to an issue litigated in [the] previous action." *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) (emphasis added).

It is clear that the standing issue that was actually litigated and decided in *Dreher* is materially different from Plaintiff's standing in the instant case. Applying the well-established rule that standing in class actions must be "analyze[d] . . . based on the allegations of personal injury by the named plaintiffs," *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017); *see Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements."), the Fourth Circuit in *Dreher* focused its standing inquiry exclusively on whether Mr. Dreher had alleged enough facts regarding his own injury to establish that he in particular had Article III standing to assert a violation of 15 U.S.C. § 1681g(a)(2). *See Dreher*, 856 F.3d at 343 ("In order to determine whether Dreher, the named plaintiff here, has standing . . . we employ a familiar three-part test."). Although Mr. Dreher argued that he suffered injury as a result of Defendant's misidentification of CardWorks as Advanta because he was deprived of the "value in knowing who it is you're dealing with," and because "if a company can hide who they are, they're not concerned about consumer goodwill," *Dreher*, 856 F.3d at 346 (internal quotation marks omitted and alterations adopted), the Fourth Circuit observed that this harm was "not the type of harm Congress sought to prevent when it enacted the FCRA"—like, for instance, harm that negatively impacts a consumer's "credit resolution process" by making that process more arduous or costly. *Id.* Based on Mr. Dreher's failure to offer facts suggesting that Defendant's identification of Advanta instead of CardWorks either negatively affected Mr. Dreher's process for resolving the Advanta account on his credit report or harmed Mr. Dreher in any other relevant fashion, the Fourth Circuit held that Mr. Dreher

7
Case No. 17-CV-07092-LHK
ORDER DENYING MOTION TO DISMISS OR TO STRIKE CLASS ALLEGATIONS

had alleged a mere "statutory violation divorced from any real world effect" and had therefore failed to establish that he had standing to pursue a § 1681g(a)(2) claim against Defendant based on Defendant's misidentification. *Id.*; *see id.* at 347 ("[Dreher] was still able to . . . obtain the information he needed to cure his credit issues and ultimately resolve those issues."); *see also id.* at 346 ("Dreher has not shown that he was prevented in any way from reaching customer service representatives to discuss his report. . . . [Defendant's] listing of Advanta instead of CardWorks had no practical effect on Dreher's receipt of the information he needed to clear the report of the Advanta account.").

In short, in *Dreher*, the Fourth Circuit considered and decided the issue of whether a specific harm—namely, the deprivation of the "value in knowing who it is you're dealing with"—suffered by a specific individual—Michael Dreher—was sufficient to afford Mr. Dreher standing to assert a § 1681g(a)(2) claim against Defendant based on Defendant's identification of Advanta instead of CardWorks in credit reports. *Dreher*, 856 F.3d at 346 (internal quotation marks omitted). Thus, the issue of whether Plaintiff in the instant case has standing to assert a § 1681g(a)(2) claim against Defendant is far from "identical" to the standing issue that was decided in *Dreher*, and is therefore not controlled by the Fourth Circuit's conclusion in *Dreher* that Mr. Dreher lacked standing. *Kamilche*, 53 F.3d at 1062. Aside from the obvious point that Plaintiff is not the same person as Mr. Dreher, it is also clear that the specific harm that Plaintiff alleges she suffered as a result of Defendant's identification of Advanta instead of CardWorks is different from the specific harm alleged by Mr. Dreher for the same violation. In particular, unlike Mr. Dreher, Plaintiff alleges that "[o]ver the course of years," in her efforts "to resolve and end the continued reporting of an Advanta Bank . . . credit card tradeline in her credit reports," Plaintiff "spent hours of her time researching the history of Advanta" and "draft[ing], fil[ing], and defend[ing]" "numerous pleadings" that incorrectly named Advanta as defendant, "without knowing and being able to identify the actual source of the inaccurate 'Advanta Bank' tradeline in her credit reports." Compl. ¶ 7 & n.3. Because Mr. Dreher did not allege this (or even similar) harm, the *Dreher* court had no occasion to decide whether such alleged harm is sufficient to give a

8

plaintiff standing to assert a § 1681g(a)(2) claim against Defendant. As a result, Plaintiff's standing in the instant case is far from identical to the standing issue that was actually litigated and decided in *Dreher*. Accordingly, *Dreher* does not preclude Plaintiff from asserting Count One against Defendant in the instant case.

Defendant argues that because a class was certified in the *Dreher* case, and because "a judgment in a certified class action binds all class members who do not opt out" of the class, Plaintiff—who was a member of the *Dreher* class and did not opt out of that class—is bound by the Fourth Circuit's dismissal in *Dreher* for lack of standing on the part of Mr. Dreher even if Plaintiff's own injuries are sufficient to establish standing. Mot. at 6. However, according to the leading treatise on class actions, "[i]n [a] case involving one class representative who lacks standing, where a court must dismiss for lack of jurisdiction"—like *Dreher*—"the dismissal may be little more than formal, for if class counsel has other available class representatives, then they can simply refile the case in those representatives' names." William B. Rubenstein, 1 Newberg on Class Actions § 2:8 (5th ed.). That is exactly what happened between *Dreher* and the instant case. Although *Dreher* was dismissed on jurisdictional grounds because the sole named plaintiff, Mr. Dreher, lacked standing, class counsel in *Dreher* "simply refile[d]" the same case in the name of another "available class representative[]" who appears to have standing—Plaintiff in the instant case. *Id.*

An examination of certain legal principles governing the interplay between standing and class actions illustrates why "the dismissal" in *Dreher* for lack of standing was "little more than formal"—or in other words, why Plaintiff is not bound by the Fourth Circuit's standing determination in *Dreher* even though a class was certified in *Dreher* and Plaintiff did not opt out of that class. *Id.* First, because the named plaintiff in *Dreher* lacked standing to bring a cause of action for violation of 15 U.S.C. § 1681g(a)(2) against Defendant, he was necessarily an "[in]adequate[]" representative of the *Dreher* class within the meaning of Federal Rule of Civil Procedure 23(a)(4), and his claim was necessarily "[a]typical of the claims . . . of the" *Dreher* class within the meaning of Federal Rule of Civil Procedure 23(a)(3). *See In re Quarterdeck*

9

Case No. 17-CV-07092-LHK
ORDER DENYING MOTION TO DISMISS OR TO STRIKE CLASS ALLEGATIONS

*Office Sys., Inc. Sec. Litig.*, 1993 WL 623310, at *3 (C.D. Cal. Sept. 30, 1993) (stating that a "named plaintiffs' lack of standing provides adequate grounds for denying certification since it indicates that their claims are atypical and that they are unable to represent the class adequately"); *Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*, 2012 WL 5199458, at *3 (N.D. Cal. Oct. 22, 2012) ("With regard to adequacy [under Federal Rule of Civil Procedure 23(a)(3)], a threshold issue to seeking class certification is a showing by the named plaintiff and proposed class representative that he has personally been injured and therefore has standing to assert the claims alleged in the complaint."); *see also Rector v. City and Cty. of Denver*, 348 F.3d 935, 950 (10th Cir. 2003) ("By definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23."); *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."). Thus, due to Mr. Dreher's atypicality and inadequacy as a class representative, no class certification was warranted in *Dreher*.

Second, and more importantly, because the sole named plaintiff in *Dreher* lacked standing to assert the class claim, the district court in *Dreher* never had jurisdiction over the class action, and therefore lacked jurisdiction to certify the *Dreher* class. If a class action "only ha[s] [] one class representative from the outset," and it is determined that the class representative lacks standing to pursue the class claims, "this means that the court *never had jurisdiction* over the [class action] matter." William B. Rubenstein, 1 Newberg on Class Actions § 2:8 (5th ed.) (emphasis added). Several courts, including the Ninth Circuit, have applied this principle to dismiss class actions when the sole named plaintiff lacks standing in lieu of allowing class counsel to replace the named plaintiff with another class member who actually has standing. Specifically, these courts have reasoned that when a sole named plaintiff in a class action is found to lack standing, the court "never had jurisdiction over the matter," and thus there can be "no opportunity for a substitute class representative to take the named plaintiff's place." *Id.*; *see Lierboe v. State*

10

*Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (refusing to allow substitution of the sole named plaintiff—who lacked standing—and instead applying "the Seventh Circuit's approach in an analogous case, *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 244–45 (7th Cir. 1986), which held that where the sole named plaintiff 'never had standing' to challenge the township's relief eligibility guidelines . . . the case must be remanded with instructions to dismiss" for lack of jurisdiction). Similarly, this principle demonstrates that the district court in *Dreher* lacked jurisdiction to certify a class. Specifically, because Mr. Dreher was the sole named plaintiff and was found to lack standing to assert the class claim in *Dreher*, the district court "never had jurisdiction over the matter," and therefore never had jurisdiction to certify the *Dreher* class. William B. Rubenstein, 1 Newberg on Class Actions § 2:8 (5th ed.). For these reasons, the Court concludes that Plaintiff is not bound by the Fourth Circuit's determination regarding Mr. Dreher's lack of standing even though a class was certified in *Dreher* and Plaintiff did not opt out of that class.

Accordingly, the Court DENIES Defendant's motion to dismiss Count One.

### B. Motion to Strike Class Allegations

"There is a split in this District as to whether a motion to strike class action allegations may be entertained at the motion to dismiss stage." *Ogola v. Chevron Corp.*, 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014). "Even courts that have been willing to entertain such a motion early in the proceedings 'have applied a very strict standard to motions to strike class allegations on the pleadings.'" *Nexus 6P Prods. Liability Litig.*, 2018 WL 1156861, at *49 (N.D. Cal. Mar. 5, 2018) (quoting *Ogola*, 2014 WL 4145408 at *2). Thus, "[o]nly if the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken." *Ogola*, 2014 WL 4145408 at *2 (internal quotation marks and citation omitted).

Defendant argues that the Court should strike Plaintiff's class allegations because Plaintiff will not be able to satisfy the typicality requirement of Rule 23(a) or the predominance requirement of Rule 23(b). Mot. at 13–14. Although Defendant appears to raise some potentially

11
Case No. 17-CV-07092-LHK
ORDER DENYING MOTION TO DISMISS OR TO STRIKE CLASS ALLEGATIONS

serious issues with respect to Plaintiff's proposed class, the Court finds it more appropriate for Defendant to raise these issues in Defendant's opposition to Plaintiff's motion for class certification. This provides both parties the opportunity to further develop their arguments and engage in discovery. This Court and other courts in this district have similarly declined to address challenges to a putative class's ability to satisfy Rule 23 at the pleading stage. *See, e.g.*, *Nexus 6P Prods. Liability Litig.*, 2018 WL 1156861 at *49 ("Although these [overbreadth] concerns are not without merit, [the defendants'] arguments are more appropriately addressed at a later stage of the proceedings when the issues have been more fully developed and sharpened."); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014) (declining to strike class allegations based on argument that individual issues will predominate). Accordingly, the Court DENIES Defendant's motion to strike Plaintiff's class allegations.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss or to strike the class allegations.

**IT IS SO ORDERED.**

Dated: June 19, 2018

_____
LUCY H. KOH
United States District Judge